IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALAN DAVID McCORMACK,

                                                          OPINION and ORDER

            Plaintiff,

                                                                12-cv-535-bbc

        v.

GARY H. HAMBLIN, Secretary, his Wardens,
Superintendents, Agents, Designees, and any Successors,
COREY BENDER, JODINE DEPPISCH,
KAREN GOURLIE, ANGELA HANSEN,
CATHY A. JESS, FLOYD MITCHELL,
MOLLY S. OLSON, JAMES PARISI,
WELCOME F. ROSE, RENEE SCHUELER
and MARK K. HEISE,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        In this civil action, pro se plaintiff Alan David McCormack is proceeding on claims

that various prison officials retaliated against him for filing a lawsuit about perceived

overcrowding in Wisconsin prisons by refusing to transfer him to minimum security custody.

Defendants have filed a motion for summary judgment as well as a motion to take judicial

notice of several court documents and plaintiff has filed a host of motions, mostly relating

to discovery issues and perceived flaws in defendants' summary judgment submissions.  For

the reasons stated below, I will grant defendants' motion to take judicial notice and deny all

of plaintiff's motions.  After considering the parties' proposed findings of fact and supporting

evidence, I will grant defendants' motion for summary judgment and direct the clerk of court to enter judgment in their favor.

## PRELIMINARY MATTERS

### A. Motion to Take Judicial Notice

Defendants have filed a motion for the court to take judicial notice of several state court records pertaining to plaintiff's petition for supervisory writ. These types of documents are appropriate for judicial notice: they are matters of judicial and public record and plaintiff has not disputed their authenticity. General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1081 (7th Cir. 1997) ("The most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records."); Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994) ("district court may also take judicial notice of matters of public record"). Accordingly, I will grant the motion.

### B. Motion for Stay Regarding Discovery

Plaintiff has filed two documents regarding discovery that the court docketed as motions to compel, dkt. ##106, 111. Plaintiff followed with another discovery motion, dkt. #112, clarifying that he had not preceded these motions with any discovery requests to defendants and admitting that it was a mistake to have filed the motions to compel. Plaintiff asks the court to stay those motions while the discovery process unfolds so that they may be reactivated depending on defendants' responses. I will deny this request because

2

there is no reason to hold these motions open; it is only after a party is dissatisfied with an opponent's discovery responses that he may file a motion to compel discovery, detailing the particular ways in which his opponent has failed to comply with the requests.  Plaintiff's preemptive motions are not tailored for this purpose so I will deny them as unnecessary.

In addition, plaintiff requests a settlement/discovery conference under Fed. R. Civ. P. 26(f), but this type of conference is held in the very early stages of litigation, and not in pro se prisoner cases, which are exempted from the rule.  Fed. R. Civ. P. 26(a)(1)(B)(iv). Accordingly, this motion will be denied.

### C. Motions to Strike

Plaintiff has filed two motions to strike the affidavits defendants have presented in support of their motion for summary judgment.  He bases the motions on three perceived problems.  Plaintiff points out that the affidavits do not state that they are made "under penalty of perjury," but this does not doom them as plaintiff believes.  Under 28 U.S.C. 1746, unsworn declarations may be made by declaring that one's statements are true under penalty of perjury.  Defendant's affidavits do not need to satisfy this rule because the affiants swore to the truth of their statements before a notary public.  Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985) ("An affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath.")

Second, plaintiff believes that the affiants are not competent to testify under Fed. R. Civ. P. 56(c)(4), which states that "an affidavit used to support a summary judgment motion

3

"must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Plaintiff does not explain why the affiants are not competent, but my examination of the affidavits uncovers no reason to strike the material. The affidavits provide testimony based on each affiant's personal knowledge. Kaba v. Stepp, 458 F.3d 678, 681 (7th Cir. 2006) ("Sworn affidavits, particularly those that are detailed, specific, and based on personal knowledge are 'competent evidence . . . .'").

Third, plaintiff argues that the testimony contained in the affidavits is false, but this amounts to nothing more than his disagreement with the version of events set forth by defendants. To the extent that plaintiff thinks certain testimony provided by defendants is false, he has been given the chance to dispute those assertions in his proposed findings of fact. Accordingly, I will deny his motions to strike.

Finally, I note that plaintiff has filed a motion for extension of time to supplement his motions to strike with further argument regarding several of defendants' affidavits. I will deny this motion as futile because his proposed supplement contains more of the same arguments I have already concluded do not warrant striking defendants' affidavits.

### D. Motion for Evidentiary Hearing

Plaintiff has filed a motion for an evidentiary hearing on summary judgment "so that all the real facts can be legitimately address[ed] under oath." Plaintiff argues that the facts adduced by defendants have been based on "bad faith" affidavits and "willful and wanton

misconduct" by defense counsel.  This is nothing more than a rehash of his arguments regarding his motions to strike that I have denied above.  I will deny this motion as well.

E. Plaintiff's Motion for Summary Judgment

Plaintiff has filed a document he titles as a "cross-motion for partial summary judgment," dkt. #86, in which he states that he should be granted summary judgment on the question of defendants' liability.  However, he does not support his argument with proposed findings of fact as required by this court's procedures to be followed while briefing summary judgment motions, a copy of which plaintiff received following the preliminary pretrial conference in this case.  Although this is reason enough to deny the motion, there is no point in doing so because the parties have fully briefed defendants' motion for summary judgment, allowing me to consider below his contention that summary judgment should be entered in his favor.

Plaintiff argues alternatively that a summary judgment ruling be postponed until he conducts discovery.  In this connection, he states that his mail is being tampered with. However, given the current stage of the case and the information I can glean from plaintiff's various motions, I see no reason to stay a ruling.  Plaintiff seems to think that because the discovery deadline is May 9, 2014, he could afford to wait until late February 2014 to start making his discovery requests, but he is mistaken.  The March 22, 2013 preliminary pretrial conference order explained how plaintiff could seek discovery and set the dispositive motions deadline at November 1, 2013 (which was subsequently extended to December 2, 2013).

Plaintiff does not explain why he waited almost a full year to begin making his discovery requests, and his statement that his mail is being tampered with is unpersuasive in light of his admission that he did not start making discovery requests until it was far too late, his inability to present concrete examples of documents he was unable to send or receive and the myriad documents he has been able to submit to the court.  In short, he does not persuade me that his inability to litigate the case stems from anything but his own tardiness in making his discovery requests.  Accordingly, to the extent that I construe plaintiff's motion for partial summary judgment as containing a motion to stay a ruling on summary judgment, I will deny that motion.

F. Motion for Assistance in Recruiting Counsel

Finally, plaintiff has renewed his motion for the court's assistance in recruiting him counsel, in which he argues again that he has been blocked from litigating the case by interference with his mail as well as a denial of his legal loan.  However, as I stated above, he has not shown that he has been unable to prosecute this case.  His major failing has been his decision to wait until February 2014 to start making discovery requests, which is no reason to recruit counsel.  Accordingly, I will deny the motion and proceed to consider the merits of defendants' summary judgment motion given the evidence that both sides have submitted.

MOTION FOR SUMMARY JUDGMENT

From the parties' proposed findings of fact and supporting evidence, I find that the following facts are undisputed and material.  In doing so I note that plaintiff disputes many of the facts proposed by defendants, prefacing his responses with the statement "Bad-Faith Sham Fact."  It is unclear whether plaintiff is trying to invoke the "sham affidavit" rule, <u>Russell v. Acme-Evans Co.</u>, 51 F.3d 64, 67-68 (7th Cir. 1995) (party may not defeat summary judgment by submitting affidavit that contradicts his or her prior deposition testimony), but if he is, he does not support his argument with any proof that defendants' affidavits contradict prior testimony.  To the extent that plaintiff believes that defendants' facts are incorrect, I will not strike proposed findings of fact just because plaintiff disagrees with them.  However, where plaintiff disputes defendants' facts with facts of his own, the dispute is noted below.

A. <u>Undisputed Facts</u>

At all times relevant to this lawsuit including the present day, plaintiff Alan David McCormack has been incarcerated at the Fox Lake Correctional Institution, a medium security facility.  Plaintiff would like to be incarcerated in a minimum security institution. Decisions about security classifications for inmates are made by the Bureau of Offender Classification and Movement.  Defendant Mark Heise is the director of the bureau.

 In  November 2007, plaintiff (as the "lead petitioner" among a group of prisoners) filed a "petition for supervisory writ" with the Wisconsin Supreme Court, seeking a "special

action release" from the Secretary of the Department of Corrections under Wis. Stat. § 304.02 to alleviate perceived overcrowding problems in Wisconsin prisons.  On March 21, 2008, the Wisconsin Supreme Court certified the case to the circuit court for Dane County, stating there was no need for the Supreme Court to exercise its supervisory authority when the circuit court had jurisdiction to consider the petition.  The circuit court dismissed the petition on October 14, 2008.  Plaintiff appealed the dismissal, but the Wisconsin Court of Appeals affirmed the dismissal and the Wisconsin Supreme Court denied plaintiff's petition for review.

Plaintiff believes that defendants retaliated against him for filing the petition for supervisory writ by keeping him in medium security when he should have been placed in minimum security. Under the Wisconsin Administrative Code, the purpose of custody classification is to determine the appropriate placement of an inmate, both in light of the needs and availability in the state's institutions and community programs, and also in light of the inmate's history, risks, sentence and potential threats to others and the public. Wis. Admin. Code §§ DOC 302.04 & DOC 302.07.

Immediately before plaintiff filed his November 2007 petition for supervisory writ, he was classified in medium security.  A social worker recommended a medium custody classification, the Program Review Committee made its recommendation of medium security on August 22, 2007 and the recommendation was approved the same day (there is no indication of who approved that recommendation).  (Plaintiff notes that when he had been housed in a private prison at earlier times, he was assigned minimum custody status).

On February 14, 2008, the first custody classification review following plaintiff's petition for supervisory writ took place. The Program Review Committee recommended that plaintiff's custody classification be changed from medium custody to minimum custody, rejecting the recommendation of the social worker, who recommended continued medium custody. The committee's report noted that plaintiff had no recent conduct issues, had completed programs such as cabinetmaking and appeared to have an appropriate attitude toward his offense and sentence.

In order to assign an inmate serving a life sentence to a minimum security classification, the new assignment must be approved by defendant Heise, the director of the Bureau of Offender Classification and Movement. In making his decisions, defendant Heise refers to inmate classification reports. These reports summarize an inmate's offense and sentence, provide information and updates on institutional adjustment and discipline and culminate in a recommendation from a Program Review Committee. Heise also considers Parole Commission actions.

On February 29, 2008, Heise declined to adopt the Program Review Committee's recommendation to place plaintiff in minimum custody, which meant that plaintiff remained at medium custody. The form documenting this review proceeding states "032108 decision: offense, sentence, time served. D-18." Heise states that "offense" refers to plaintiff's offense; he was convicted of first-degree murder. "Sentence" referred to plaintiff's life sentence. "Time-served" referred to the fact that plaintiff had served approximately 19 years of that sentence at the time of this determination. Finally, "D-18" referred to the parole

commission's previous ruling denying parole and setting plaintiff's next hearing for 18 months in the future.

(Plaintiff argues that Heise originally decided to approve the recommendation but changed his mind on March 21, 2008, after plaintiff filed his petition for supervisory writ. However, he does not refer to any admissible evidence to support this theory. The phrase "032108 decision" may refer to March 21, 2008. If so, that date is confusing, given that the "Decision Date" field in the document states "2/29/08," but there is no indication that Heise originally approved the recommendation and then changed his mind.)

Plaintiff appealed administratively, and the appeal was denied by defendant Angela Hansen, a bureau "sector chief," which is actually a position subordinate to that of Heise.

On March 11, 2009, the Program Review Committee recommended minimum custody, following the social worker's new recommendation for transfer to minimum security. The committee believed that plaintiff's adjustment was "exemplary." On April 1, 2009, Heise declined to adopt that recommendation, with the same comments he made in the previous decision. Plaintiff appealed the decision, but Hansen denied it.

On July 17, 2009, the Program Review Committee recommended minimum custody for plaintiff. Defendant Corey Bender, a classification specialist for the bureau, was one of the staff members on that Program Review Committee, and provided a summary about plaintiff, including a summary of a past conduct report in which plaintiff was found guilty of attempted escape. Despite the evidence Bender provided, she and the rest of the committee unanimously recommended minimum security. Heise declined to adopt the

Program Review Committee recommendation on December 1, 2009. In his comments he included plaintiff's "minimization" of the escape conduct report as a reason for his decision. He also concluded that plaintiff "deni[ed]/minimiz[ed] his offense" (plaintiff denied he committed the murder). That decision was appealed administratively and was denied by defendant James Parisi, a bureau sector chief.

On July 15, 2010, the Program Review Committee recommended minimum custody. Heise declined to adopt that recommendation on October 19, 2010. Heise continued to focus (as he would for the remainder of the relevant decisions) on plaintiff's offense, sentence, the time he had served and his minimization of the 1997 escape conduct report. Plaintiff appealed administratively; the appeal was denied by defendant Floyd Mitchell, a Division of Adult Institutions assistant administrator). Defendant Molly Olson, a bureau sector chief, assisted Mitchell. Defendant Jodine Deppish, another bureau sector chief, denied a duplicative attempt by plaintiff to take an administrative appeal of the same classification decision.

On July 7, 2011, the Program Review Committee recommended minimum custody. Defendant Bender served on the committee and provided information about a past conduct report for attempted escape, although she joined in the unanimous recommendation. Heise declined to adopt the recommendation on September 30, 2011, relying on the same factors as the previous decision, and noting again that plaintiff maintained his innocence.

On January 5, 2012, the Program Review Committee recommended minimum custody, again approving of plaintiff's "positive adjustment." Heise declined to adopt that

11

recommendation on January 12, 2012. In particular , he stated, "[G]reatest concerns at this time relative to minimum is the combination of the nature and seriousness of the offense, which is of record and unreversed, the sentence and the inmate's attitude regarding the offense in which he maintains his innocence."

On January 23, 2013, the Program Review Committee recommended minimum custody and Heise declined to adopt that recommendation on April 16, 2013, relying on the same reasons set out in the previous decision. Plaintiff appealed administratively; the appeal was denied by defendant Cathy Jess, a Division of Adult Institutions administrator.

Also, in March and April of 2011, plaintiff addressed letters to defendant Jess and defendant Gary Hamblin, who served as DOC Secretary from January 2011 to October 2012. Jess responded on her own behalf and on Hamblin's.

During these events, plaintiff also filed inmate complaints, some of which arguably related to classification decisions or a retaliation allegation or both. Defendant Renee Schueler rejected or recommended denial of some complaints in her capacity as an institution complaint examiner. Program assistant defendant Karen Gourlie processed some of plaintiff's administrative appeals related to inmate complaints. Corrections Complaint Examiner defendant Welcome Rose addressed some of plaintiff's inmate complaint appeals and recommended denying them.

12

B. <u>Discussion</u>

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Indiana Grocery, Inc. v. Super Valu Stores, Inc.</u>, 864 F.2d 1409, 1412 (7th Cir. 1989).  "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party."  <u>Brummett v. Sinclair Broadcast Group, Inc.</u>, 414 F.3d 686, 692 (7th Cir. 2005).  If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper.  <u>Celotex</u>, 477 U.S. at 322.

Plaintiff was granted leave to proceed on the following claims: (1) defendants Mark Heise and Corey Bender retaliated against him for filing his petition for a supervisory writ, in violation of the First Amendment; and (2) defendants Angela Hansen, James Parisi, Molly Olson, Floyd Mitchell, Jodine Deppisch, Gary Hamblin, Cathy Jess, Renee Schueler, Karen Gourlie and Welcome Rose participated in this retaliation by affirming his appeals, denying his inmate grievances or failing to respond to his letters.

A plaintiff alleging First Amendment claims of retaliation must prove three things: (1) plaintiff was engaged in constitutionally protected speech; (2) a public official took adverse actions against him that would likely deter a person of "ordinary firmness" from engaging in First Amendment activity in the future; and (3) the adverse actions were motivated at least in part as a response to plaintiff's protected speech.  <u>Bridges v. Gilbert</u>,

13

557 F.3d 541, 546 (7th Cir. 2009); <u>Mosely v. Board of Education of Chicago</u>, 434 F.3d 527, 533 (7th Cir. 2006). Plaintiff may rely on "[c]ircumstantial proof, such as the timing of events . . . to establish the defendant's retaliatory motive," <u>Massey v. Johnson</u>, 457 F.3d 711, 716-17 (7th Cir. 2006), but suspicious timing is almost never sufficient to establish a retaliatory motive in and of itself. <u>Stone v. City of Indianapolis Public Utilities Division</u>, 281 F.3d 640, 644 (7th Cir. 2002).

Plaintiff can meet the first prong. He has shown that he was engaged in constitutionally protected speech when he filed his petition for supervisory writ and, like all inmates, he has a constitutional right under the First Amendment to file grievances and lawsuits without the threat of retaliation. <u>Hoskins v. Lenear</u>, 395 F.3d 372, 375 (7th Cir. 2005); <u>Babcock v. White</u>, 102 F.3d 267, 274–75 (7th Cir. 1996). As the second prong, it seems likely that continued placement in medium security confinement rather than minimum security might deter a person of ordinary firmness from engaging in First Amendment activity in the future. However, plaintiff's claims fail in the third prong of the retaliation analysis; he fails to provide evidence from which a reasonable inference could be drawn that the classification decisions were motivated as a response to plaintiff's protected speech. The record shows that Heise disagreed with the Program Review Committee's analysis and focused on factors different from those the committee considered, but by itself, this is not a reason to think that Heise acted with retaliatory motive.

The only piece of evidence plaintiff has to support his retaliation claim has to do with defendant Heise's February/March 2008 classification decision, which is dated February 29,

14

2008, but contains the comment,  "032108 decision: offense, sentence, time served. D-18."
The likelihood that the notation "032108" means March 21, 2008 may raise a question
about when Heise made this decision, but again, this is not enough by itself to show
retaliatory animus.   Plaintiff believes that the date discrepancy does show such animus
because March 21, 2008 is also the date that the Wisconsin Supreme Court transferred his
petition for supervisory writ regarding prison overcrowding to the Circuit Court for Dane
County.   Plaintiff surmises that defendant Heise initially decided to follow the Program
Review Committee's recommendation for minimum security, but then reversed course on
March 21, 2008 and decided to keep plaintiff in medium security, after seeing or hearing
about the Supreme Court's decision.   However, plaintiff has nothing more than speculation
to support this theory.   This is not enough to defeat defendants' motion for summary
judgment.  Rockwell Automation, Inc. v. National Union Fire Insurance Co. of Pittsburgh,
PA, 544 F.3d 752, 757 (7th Cir. 2008) ("'mere speculation or conjecture will not defeat a
summary judgment motion'") (quoting McCoy v. Harrison, 341 F.3d 600, 604 (7th Cir.
2003)).

At most, plaintiff shows a possible discrepancy in the dates on Heise's decision, but
the *reason* for that discrepancy is unknown.   No evidence exists to suggest that Heise
originally decided to move plaintiff to minimum security and then changed his mind.
Additionally, Heise states that he recalls knowing that plaintiff had a pending case in the
Supreme Court only because it was mentioned in plaintiff's classification documents and
that he would have had no reason to know about the March 21 Supreme Court decision.

15

Plaintiff has not cited anything in the record to support his theory that Heise ever received word about the Supreme Court's decision and the circumstances make it unlikely he would have known of the ruling on the same day it was issued. He was not a named party and he would have had no authority to order the "special action release" sought by plaintiff; only the Secretary of the Department of Corrections has the authority to issue such an order.

Moreover, even if Heise had known about the March 21 order, plaintiff does not explain why the order would have given Heise a reason to change his mind about the classification decision. The order merely transferred the litigation from the Supreme Court to the circuit court. It is difficult to see how this would provide any motivation for Heise to retaliate against plaintiff beyond that which would have existed from the fact that the lawsuit was filed in the first place. The mere fact that plaintiff filed a lawsuit against the Secretary of the Department of Corrections three months before Heise made his decision does not show "suspicious timing," which in any event is rarely sufficient to prove a retaliation case at the summary judgment stage of a case. Stone, 281 F.3d at 644.

Plaintiff's claims regarding Heise's later decisions, as well as his claims against the rest of the defendants are even more tenuous. Taking the February/March 2008 decision by Heise out of the equation, plaintiff has cited no evidence suggesting that any of the defendants acted the way they did in retaliation for his lawsuit. In particular, plaintiff alleges that defendant Bender falsified information about a conduct report for attempted escape as part of the Program Review Committee. However, the evidence submitted by defendants shows that plaintiff received a conduct report for attempted escape, and plaintiff

16

does not present any evidence disputing defendants' showing. Moreover, even had Bender falsified a conduct report, plaintiff has not shown anything to suggest it had anything to do with retaliation for the lawsuit; Bender first presented information about the conduct regarding a July 17, 2009 Program Review Committee recommendation about nine months after plaintiff's lawsuit was dismissed, which undermines any allegation of suspicious timing. Moreover, Bender agreed with the recommendation to transfer plaintiff to minimum custody, which cuts strongly against plaintiff's theory of retaliatory animus.

As for the remaining defendants, who either reviewed Heise's decisions or considered his grievances or letters, plaintiff fails to provide any evidence, or even a plausible rationale, for why they could be found to have contributed to retaliation against him. The only coherent argument plaintiff makes about these defendants is that some of them reviewed Heise's decisions even though they technically were his subordinates. This is a due process argument rather than a retaliation argument, however, and plaintiff was not allowed to proceed on due process claims in this lawsuit.

Similarly, plaintiff argues that he was treated more harshly than other prisoners serving life sentences and repeatedly characterizes his claims as equal protection claims under a "class of one" theory, but I explicitly denied him leave to proceed on such claims in the court's January 11, 2013 screening order:

> The United States Supreme Court has found that class of one equal protection claims are not cognizable if the challenged action by its nature "involve[s] discretionary decision-making based on a vast array of subjective, individualized assessments," such as in the government employment context. Engquist, 553 U.S. at 603; Del Marcelle, 680 F.3d at 899 (Posner, J., concurring in judgment). Decisions about security classifications rest on an

multitude of subjective judgments.  Wis. Adm. Code s DOC 302.07 (listing
fourteen factors).   Accordingly, plaintiff's equal protection claim will be
dismissed.  <u>Dawson v. Norwood</u>,  2010 WL 2232355, *2 (W.D. Mich. Jun.
1, 2010) ("The class-of-one equal protection theory has no place in the prison
context where a prisoner challenges discretionary decisions regarding security
classifications and prisoner placement."); <u>Adams v. Meloy</u>, 287 F. App'x 531,
534 (7th Cir. 2008) (unpublished opinion) (class of one claim against parole
board "has no merit" because its "inherent discretion necessitates that some
prisoners will receive more favorable treatment").

Dkt. #21 at 26-27.  In any case, plaintiff fails to show that the other defendants were truly

similarly situated to plaintiff in terms of their offense characteristics and behavior in prison,

such that one might infer that Heise treated plaintiff differently despite the prisoners'

relative similarities.

Because plaintiff has failed to show that any of the defendants acted with a retaliatory

motive in keeping him in medium security status, defendants' motion for summary judgment

must be granted.  Plaintiff's motion for partial summary judgment will be denied.


ORDER

IT IS ORDERED that

(1)  Defendants' motion for the court to take judicial notice of several state court

records, dkt. #84, is GRANTED.

(2) Plaintiff Alan David McCormack's motion to stay his discovery motions, dkt.

#112, is DENIED.

(3)  Plaintiff's motion for a settlement/discovery conference, dkt. #112, is DENIED.

(4)   Plaintiff's motions to compel discovery, dkt. ##106, 111, are DENIED as unnecessary.

(5)   Plaintiff's motions to strike affidavits submitted by defendants, dkt. ##94, 98, are DENIED.

(6)   Plaintiff's motion for extension of time to supplement his motions to strike defendants' affidavits, dkt. #100, is DENIED.

(7)   Plaintiff's motion for an evidentiary hearing on the motion for summary judgment, dkt. #103, is DENIED.

(8)   Plaintiff's motion to stay a ruling on summary judgment, dkt. #86, is DENIED.

(9)   Plaintiff's motion for the court's assistance in recruiting counsel, dkt. #61, is DENIED.

(10)  Plaintiff's motion for partial summary judgment, dkt. #86, is DENIED.

(11)  Defendants' motion for summary judgment, dkt. #69, is GRANTED.  The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 13th day of March, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge